# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**JAMES S. REGAN,**

    **Petitioner,**

v.                                          **Case No. 3:22cv10924-MCR/MAF**

**RICKY DIXON, Secretary,**
**Department of Corrections,**

    **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On August 3, 2022, Petitioner James S. Regan, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. After direction from this Court, ECF No. 5, Regan filed an amended § 2254 petition, ECF No. 7, and supporting memorandum, ECF No. 8. On November 28, 2022, Respondent filed an answer, with exhibits. ECF No. 13.

Thereafter, Petitioner Regan requested time to file a second amended § 2254 petition, ECF No. 14, which this Court allowed, ECF No. 18, directing him to submit such on or before April 17, 2023, and reminding him about the one-year AEDPA limitations period. Petitioner did not submit a second amended petition and, by order on May 22, 2023, ECF No. 19, this Court, in an abundance of caution, extended his deadline to June 16, 2023, and

informed him that if he did not file his second amended petition by then, the case would proceed on his amended petition and Respondent's answer. Petitioner subsequently filed two motions for extensions of time, ECF Nos. 20 and 22, which this Court granted, ECF Nos. 21 and 23, extending the due date for the second amended petition to September 15, 2023.

On or about August 28, 2023, Petitioner Regan filed a motion requesting appointment of counsel. ECF No. 24. By order on August 31, 2023, this Court denied that motion without prejudice and reminded Petitioner that his second amended petition was due September 15, 2023. ECF No. 25. This Court also reminded him that if he did not submit a second amended petition by that date, the case would proceed on his amended petition, ECF No. 7, and Respondent's answer, ECF No. 13. *See* ECF No. 25. To date, Petitioner Regan has not filed anything else in this case.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. For the reasons stated herein, the filings before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

Case No. 3:22cv10924-MCR/MAF

## **Procedural Background**

By information filed July 30, 2019, in Escambia County Circuit Court Case 2019-CF-3943, the State of Florida charged Petitioner James S. Regan with two counts in connection with events that took place on or about July 7, 2019: (1) battery upon a person 65 years of age or older, a third degree felony, in violation of sections 784.03 and 784.08(2)(c) Florida Statutes; and (2) assault (domestic violence), a second degree misdemeanor, in violation of section 784.011, Florida Statutes. Ex. A at 6.[1] The charges arose from events that took place on July 7, 2019, involving Regan and his mother, the victim. *See, e.g.,* Ex. F at 106.

Regan proceeded to a jury trial on December 5, 2019. Ex. B at 29-145. Regan testified in his defense. *Id*. at 84-91. The jury found him guilty as charged on both counts. Ex. A at 36; Ex. B at 140-42. On January 16, 2020, the judge adjudicated him guilty and sentenced him to four years in prison on Count 1, with credit for 194 days' time served, and time served on Count 2. Ex. A at 72-80.

Regan appealed to the First District Court of Appeal (First DCA), assigned case number 1D20-610. Ex. A at 91-92. His counsel filed an initial

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 13.

brief pursuant to Anders v. California, 386 U.S. 738 (1967).  Ex. C.  On April 7, 2021, the First DCA affirmed the case per curiam without a written opinion.  Ex. D; Regan v. State, 314 So. 3d 1259 (Fla. 1st DCA 2021) (table).

On April 21, 2021, Regan filed a pro se motion for post-conviction relief, pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. F at 37-67.  By order on July 20, 2021, the state post-conviction trial court found the motion insufficiently pled and allowed Regan sixty (60) days to file an amended motion.  *Id*. at 68-69.  On August 31, 2021, Regan filed an amended Rule 3.850 motion, raising four claims of ineffective assistance of counsel.  *Id*. at 70-104.  By order rendered October 5, 2021, the court summarily denied relief.  *Id*. at 105-13.

Regan appealed to the First DCA, assigned case number 1D21-3433, and filed an initial brief.  Ex. G.  The State filed an answer brief, Ex. H, and Regan filed a reply, Ex. I.  On March 29, 2022, the First DCA affirmed the case without a written opinion.  Ex. J; Regan v. State, 336 So. 3d 253 (Fla. 1st DCA 2022) (table).  The mandate issued April 26, 2022.  Ex. J.

As indicated above, on August 3, 2022, Regan filed his § 2254 petition. ECF No. 1. After direction from this Court, ECF No. 5, Regan filed an amended § 2254 petition, ECF No. 7, and supporting memorandum, ECF No. 8.  He raises one ground alleging ineffective assistance of counsel (IAC),

specifically that his trial counsel did not investigate or use the "captured in-car video recorded statement by the victim" referenced in the sheriff deputy's arrest report. *Id.* at 12.

On November 28, 2022, Respondent filed an answer, with exhibits. ECF No. 13. Thereafter, Regan sought to file a second amended § 2254 petition, and this Court allowed him opportunities to do so. *See* ECF Nos. 14, 18-23. In the order entered August 31, 2023, denying Regan's motion for appointment of counsel, this Court reminded Regan that if he did not submit a second amended petition by the due date, September 15, 2023, the case would proceed on his amended petition and the Respondent's answer. ECF No. 25. To date, Petitioner Regan has filed nothing else in this case.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody. Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*.

For IAC claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Id.

As an initial matter, after he filed his § 2254 petition, Regan was released from incarceration. See ECF No. 18; https://fdc.myflorida.com/offenderSearch (website for Florida Department of Corrections indicating Regan's release date of November 28, 2022). "[A] habeas petitioner who has been released from imprisonment subsequent to his filing a § 2254 petition must establish that his petition still presents a case or controversy under Article III, § 2, of the United States Constitution, and therefore is not moot." Mattern v. Sec'y for Dep't of Corr., 494 F.3d 1282, 1285 (11th Cir.

2007). *See* Spencer v. Kemna, 523 U.S. 1, 7 (1998) ("Throughout the litigation, the plaintiff 'must have suffered or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" (citation omitted)).  "In other words, once a habeas petitioner has been released from imprisonment, the petitioner must establish that 'some 'collateral consequence' of the conviction' exists." Mattern, 494 F.3d at 1285 (quoting Spencer, 523 U.S. at 7).  The U.S. Supreme Court "has determined that wrongful convictions can have continuing collateral consequences" *id.*, and has explained that "[i]n recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur," Spencer, 532 U.S. at 8.  *See, e.g.*, Sibron v. New York, 392 U.S. 40, 55-58 (1968).  Accordingly, because Petitioner Regan seeks to have his conviction vacated, *see* ECF No. 7 at 24, his action is not mooted by his release from incarceration.  *See, e.g.*, Bostick v. Crews, No. 4:11cv566-RH/CAS, 2014 WL 4983546 (N.D. Fla. Oct. 6, 2014) (district court order adopting Report and Recommendation which had explained, among other things, petitioner had completed his prison term after he filed habeas petition but habeas case was not moot because petitioner challenges his conviction); Verity v. Florida,

No. 2:12cv117-FtM-29DN, 2014 WL 1285898 (M.D. Fla. Mar. 31, 2014) (order of district judge disagreeing with Respondent's contention that habeas claim was mooted by petitioner's release from incarceration: "Completion of a criminal sentence does not automatically render a petition for habeas relief moot because there could be collateral consequences of a wrongful conviction, thus satisfying the case-or-controversy jurisdictional requirement of Article III of the Constitution. . . . [T]o the extent Petitioner seeks relief from the underlying aggravated manslaughter conviction, there are still collateral consequences that could flow from this conviction, such as the denial of Petitioner's right to carry a firearm, and the Court disagrees with Respondent' assertion that [the claim] is moot."); Leonard v. Inch, No. 4:20cv10005-King/Brannon, 2021 WL 1842287 (S.D. Fla. April 12, 2021) (Report and Recommendation explaining, "[W]hen a criminal defendant or habeas petitioner challenges his *conviction*, as opposed to merely his expired *sentence*, federal courts presume the existence of collateral consequences staving off a dismissal for mootness.  That presumption is applicable given the nature of Petitioner's habeas claims, so even if his release from prison does not involve continued probation or supervision, it does not moot the case." (citations omitted)), adopted by order (S.D. Fla. May 7, 2021), 2021 WL 1840584.

In his petition, Regan asserts his trial counsel provided ineffective assistance by not investigating or using at trial the "captured in-car video recorded statement by the victim" referenced in the sheriff deputy's arrest report. ECF No. 7 at 12. He asserts he asked trial counsel "to investigate the video recorded statement in order to use it as credibility evidence during trial and substantiate his innocence." *Id*. He asserts that "prior to trial the victim while maintaining contact with Petitioner revealed that she never stated to [D]eputy Guarino that she made accusations of being battered by Petitioner." *Id*. Deputy Guarino, the victim, and Petitioner all testified at the trial and "all three of their testimonies differed significant details," specifically "1.) Deputy Guarino testified the victim stated Petitioner 'grabbed and shook her,' 2.) [t]he victim denied that Petitioner grabbed and shook her but stated that Petitioner merely 'caught her nightgown' and she pulled away, [and] 3.) Petitioner testified he grabbed the victim's nightgown to prevent her from running out and falling in their pool." *Id*. at 13. Petitioner points out that "during deliberations the jury asked in a note to read the police report specifically to clarify the victim's statements to the deputy on the day of the incident" and if trial counsel had "investigated and entered the recorded statement, the results of the trial would have rendered a different outcome." *Id*. at 14.

Respondent indicates Petitioner Regan exhausted this ground. ECF No. 13 at 7. Respondent explains Regan raised a similar claim as the first ground in his amended Rule 3.850 motion, Ex. F at 80-83, and challenged the denial thereof on appeal to the First DCA, Ex. G. *See* ECF No. 13 at 7.

Assuming Regan raises in this Court the same claim he raised in the state courts, such claim should be denied. After setting forth the Strickland standard, the state post-conviction trial court denied the claim, making the following findings:

> BACKGROUND
>
> Defendant was charged with battery on a person 65 years of age or older and with simple assault. (Exhibit B. [Ex. A at 6.]) The charges were based on allegations that on July 7, 2019, Defendant grabbed the victim, his 88-year-old mother Barbara Regan, by the neckline of her clothing and shook her, causing an injury to her arm, and that he threatened to throw her into the swimming pool in the backyard. He was found guilty as charged and was sentenced to 48 months on the battery offense and to time served on the assault. (Exhibit C. [Ex. A at 36; Ex. B at 140-42.])
>
> CLAIM ONE
>
> Defendant claims trial counsel was ineffective for failing to investigate the 911 call by the victim and the video surveillance footage from Deputy Guarino's patrol vehicle. He alleges he informed counsel that the victim never told law enforcement that her son had battered, threatened, or frightened her, and that she only called the police to obtain help in claiming Defendant down. Defendant further alleges the video would show the conversation between the victim and the deputy, which would have demonstrated the truth of the information Defendant advised

counsel of. He asserts the jury would have been able to observe the victim's demeanor and that she never complained her son had battered her or that she was frightened of her son, and that she only called the police to calm Defendant because he was irate with others who had manipulated his family out of estate property.

     At trial, Deputy Brian Guarino testified he made contact with the victim at the end of her driveway near the road, and she appeared disheveled, worried, and frightened, and he observed an injury to her left forearm. (Exhibit D, p. 65. [Ex. B at 65.]) He testified the neckline of her clothing appeared torn, and he took photographs of the victim, which were admitted into evidence. (Exhibit D, pp. 65-66. [Ex. B at 65-66.]) Guarino testified that Defendant appeared agitated. (Exhibit D, pp. 66-67. [Ex. B at 66-67.]) Guarino also testified the victim was able to tell him what part of the clothing Defendant grabbed her on. (Exhibit D, p. 69. [Ex. B at 69.])

     The victim testified Defendant was upset about some property they owned. (Exhibit D, p. 72. [Ex. B at 72.]) She denied that he grabbed or shook her but testified that he reached out and "caught" her nightgown, she pulled away from him, the nightgown tore, and she hit the refrigerator, injuring her arm. (Exhibit D, pp. 72-73. [Ex. B at 72-73.]) She also testified that she got away into the back yard, that Defendant said he would grab her and throw her into the pool, and that she could swim. (Exhibit D, pp. 73-74. [Ex. B at 73-74.]) She testified she called the police on her cell phone as she was going out the door, because it was too much for her to calm Defendant down, and she could not get him to "shut up." (Exhibit D, pp. 74, 76. [Ex. B at 74, 76.]) On cross examination, the victim testified she was upset but not scared. (Exhibit D, p. 75. [Ex. B at 75.]) She further testified Defendant was upset at her, but he had never hit her, and she was not scared he was going to push her into the pool. (Exhibit D, pp. 75-76. [Ex. B at 75-76.])

     On redirect examination, Guarino testified the victim stated Defendant grabbed and shook her. (Exhibit D, pp. 77-78. Ex. B at 77-78.])

>Defendant testified he had been convicted of two felonies and a misdemeanor involving dishonesty. (Exhibit D, p. 88. [Ex. B at 88.])  He testified he was arguing with his mother about property others were trying to steal, and when she tried to leave the kitchen, he grabbed her shirt to prevent her from going out the back door because he was concerned she might fall into the pool. (Exhibit D, pp. 88-90. [Ex. B at 88-90.])  Defendant denied shaking his mother, yelling at her, or threatening to throw her in the pool.  (Exhibit D, pp. 89-91. [Ex. B at 89-91.])
>
>In the statement of acts in his motion, Defendant alleges counsel never played for him or informed him of the substance of the in-car recording or the 911 call.  Otherwise, Defendant fails to allege facts showing he has knowledge of the contents of the recordings.  Therefore, Defendant's assertion that the recordings were exculpatory is speculative, and his claim is insufficient to merit relief.
>
>Moreover, Guarino's testimony was based on his observation of the victim's demeanor and her statement to him. Defendant speculates the recordings would support his allegation that the victim never stated Defendant shook her. However, Defendant fails to allege facts that the recordings would show the victim's demeanor was different than that described by Guarino.  Therefore, the claim is insufficiently pled.
>
>To the extent the recordings would show the victim never stated Defendant shook her, there was no reasonable probability of a different outcome.  The evidence showed that Defendant grabbed the victim by her collar to prevent her from leaving, causing her to be injured.  The State argued that grabbing someone was enough for a battery, which did not require a shaking. (Exhibit D, p. 117. [Ex. B at 117.])

Ex. F at 106-09 (footnote omitted).  On appeal, the First DCA per curiam affirmed the case without a written opinion.  Ex. J.  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even

though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Wright v. Sec'y, Dep't of Corr., 278 F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.").

Specifically, the record references in brackets in the quoted portions of the order, above, support the post-conviction court's findings regarding the procedural history as well as testimony Deputy Guarino, the victim, and Regan.  As the court determined, the prosecution argued that Regan grabbing the victim was enough for battery, Ex. B at 117, and the evidence, including Regan's own testimony, Ex. B at 88-90, showed he grabbed the victim to prevent her from going out the door.  *See* § 784.03(1), Fla. Stat. (2018) ("The offense of battery occurs when a person: 1. Actually and intentionally touches or strikes another person against the will of the other;

or 2. Intentionally causes bodily harm to another person."); § 784.08(2)(c), Fla. Stat. (2018) (providing that battery on person 65 years of age or older constitutes third degree felony).

Moreover, as Respondent indicates, ECF No. 13 at 13, Regan merely speculates that defense counsel did not review the dash recording. During cross-examination of Deputy Guarino, defense counsel asked: "In your conversation with her [the victim], which was recorded, you had to ask her over and over [about] what really happened and she was talking about other stuff." Ex. B at 68-69. This suggests that, contrary to Regan's allegation, defense counsel did review the recording.

Based on the foregoing, Petitioner Regan has not shown the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

## Conclusion

Petitioner Regan is not entitled to federal habeas relief. It is respectfully **RECOMMENDED** that the amended § 2254 petition, ECF No. 7, be **DENIED**.

## **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability. The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the amended § 2254 petition (ECF No. 7).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on December 5, 2023.

S/  Martin A. Fitzpatrick
MARTIN A. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.